**United States District Court**
For the Northern District of California

1
2
3
4
5
6                                **NOT FOR CITATION**
7
8                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
9
10
11
12   ALICIA LOPEZ,
13              Plaintiff,                      No. C 05-3757 PJH
14        v.                                    **ORDER GRANTING MOTION
                                                TO REMAND**
15   NEW UNITED MOTOR
     MANUFACTURING, INC.; IMRAN
16   HUSAINALI; CAROLYN PEREZ;
     and ROBERT McCULLOUGH,
17
              Defendants.
18   _____/
19        Now before the court is plaintiff's motion to remand.  Having carefully reviewed the
20   parties' papers and considered their arguments and the relevant legal authority, and good
21   cause appearing, the court hereby GRANTS the motion to remand, and DENIES the
22   accompanying motion for attorney's fees, as follows.
23                                **INTRODUCTION**
24        On August 5, 2005, plaintiff Alicia Lopez brought an action in the Alameda County
25   Superior Court against her former employer, New United Motor Manufacturing, Inc. ("NUMMI"),
26   as well as several NUMMI employees.
27        In the complaint, plaintiff alleges that in April 2004, she required time off, both as
28   accommodation of her alleged disability and as medical leave.  She claims that NUMMI

**United States District Court**
For the Northern District of California

1   granted her request for medical leave but later retaliated against her for taking the leave.

2   Specifically, she asserts that when she was released by her doctor to work on modified duty,

3   NUMMI would not permit her to return to work until she could return without restrictions.  She

4   claims that her doctor released her without restrictions on July 26, 2004, but that when she

5   attempted to return to work on that date, she was told that she could not return until all her

6   previous doctors had issued full medical releases.  She alleges that although her current

7   doctor fully released her to return to work, in August, September, and October 2004, NUMMI

8   representatives continued to demand releases from all of her old doctors.

9       Plaintiff alleges six causes of action.  Four are based on alleged violations of the

10  California Fair Employment and Housing Act, Cal. Gov. Code § 12900 et seq. ("FEHA").

11  These include (1) failure to accommodate disability; (2) failure to engage in the good faith

12  interactive process regarding accommodation of disability; (3) discrimination on the basis of

13  disability; and (4) retaliation for requesting accommodations of disability.  Additionally, she

14  alleges (5) retaliatory termination in violation of the California Family Rights Act, Cal. Gov.

15  Code § 12945.2 ("CFRA") and (6) wrongful termination in violation of public policy under

16  California common law.

17      On September 16, 2005, defendants removed the action to this court, asserting that

18  one of plaintiff's FEHA claims as well as plaintiff's claim of wrongful termination in violation of

19  public policy raise federal questions under 28 U.S.C. § 1331 because they involve the

20  interpretation of the Collective Bargaining Agreement ("CBA") and Last Chance Agreement

21  ("LCA")[1] between plaintiff and defendant NUMMI.  Defendants contend that if plaintiff's claims

22  implicate and require interpretation of the CBA, they are preempted by § 301 of the Labor

23  Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Thus, defendants assert, this court

24  has original jurisdiction over the case.  Plaintiff now seeks an order remanding the case, and

25  also seeks sanctions for improper removal.

26  _____

27      [1] Defendants allege that the plaintiff signed the LCA in December 2004, as part of a
    settlement of a grievance filed under the CBA regarding her termination.  A copy of the LCA is
28  attached as Exh. C to the notice of removal.  Among other things, the LCA stated that plaintiff
    could work at NUMMI, subject to a 12-month probationary period.

**DISCUSSION**

**A.      Motion to Remand**

        A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court.  28 U.S.C. § 1441.  The removal statutes are construed restrictively, so as to limit removal jurisdiction.   Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Hofler v. Aetna US Healthcare, 296 F.3d 764, 767 (9th Cir. 2002).  Doubts as to removability are resolved in favor of remanding the case to state court.  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).  There is a "strong presumption" against removal jurisdiction.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

**B.      Complete Preemption and LMRA § 301**

        Federal jurisdiction typically exists only when a federal question is presented on the face of the well-pleaded complaint.  Balcorta v. Twentieth-Century-Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000).  A federal law defense to a state-law claim does not confer jurisdiction on a federal court, even if the defense is one of federal preemption and is anticipated in the plaintiff's complaint.  Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 14 (1983); Louisville & N.R. Co. v. Mottley, 211 U.S. 149, 211 U.S. 149, 154 (1908).

        An exception to the general rule arises whenever the preemptive force of a statute is so strong that it "completely preempt[s]" an area of state law.  Balcorta, 208 F.3d at 1107.  The complete-preemption exception to the well-pleaded complaint rule is applied primarily under § 301 of the LMRA.  Id.  That section vests jurisdiction in the federal courts over suits for violations of contracts between employers and labor organizations representing employees.  29 U.S.C. § 185(a).  The Supreme Court has interpreted § 301 as compelling complete preemption of state law claims brought to enforce collective bargaining agreements.  Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 560 (1968).  The Court has also expanded § 301 preemption to include cases the resolution of which "is substantially dependent upon analysis of the terms of [a collective bargaining

3

**United States District Court**
For the Northern District of California

1   agreement].” <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 220 (1985).

2          The purpose of expanding complete preemption beyond the “suits for violations of

3   contracts” language of § 301 is to promote uniformity in the interpretation of CBAs and to

4   generate and preserve a body of consistent federal labor law.  <u>Lingle v. Norge Div. of Magic</u>

5   <u>Chef, Inc.</u>, 486 U.S. 399, 405-06 (1988).  Another is to promote the federal policy favoring

6   arbitration and to prevent litigants from using state law litigation to side-step or alter the

7   negotiated provisions of a CBA, including the dispute resolution procedures.  <u>Allis-Chalmers</u>,

8   471 U.S. at 211.  However, § 301 preemption is “not designed to trump substantive and

9   mandatory state law regulation of the employee-employer relationship” or to protect employers

10  from all substantive aspects of state law.  <u>Humble v. Boeing Co.</u>, 305 F.3d 1004, 1007 (9th

11  Cir. 2002).  Thus, not every claim that requires a court to look at or refer to the language of a

12  labor-management agreement is necessarily preempted.  <u>Assoc. Builders & Contractors, Inc.</u>,

13  <u>v. Local 302 Int’l Bd. of Elec. Workers</u>, 109 F.3d 1353, 1357 (9th Cir. 1997).

14         The Supreme Court has indicated that § 301 “cannot be read broadly to pre-empt non-

15  negotiable rights conferred on individual employees as a matter of state law.” <u>Livadas v.</u>

16  <u>Bradshaw</u>, 512 U.S. 107, 123 (1994).  A claim brought in a state court on the basis of a state

17  law that is independent of rights under the collective bargaining agreement will not be

18  preempted, even if a grievance arising from precisely the same facts could be pursued.

19  <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1076 (2005) (citing <u>Livadas</u>, 512 U.S. at 123).  In

20  addition, when the meaning of the terms of the CBA is not in dispute, the mere fact that a CBA

21  may be consulted in the course of state-law litigation does not mandate preemption of the

22  state law claim by § 301.  <u>Id.</u>  In order for complete preemption to apply, the need to interpret

23  the CBA “must inure in the nature of the plaintiff’s claim.  If the claim is simply based on state

24  law, § 301 preemption is not mandated simply because the defendant refers to the CBA in

25  mounting a defense.”  <u>Id.</u> (quoting <u>Cramer v. Consolidated Freightways</u>, 255 F.3d 683, 691

26  (9th Cir. 2001)).

27  **C.    Analysis**

28         Plaintiff argues that the case was improperly removed.  Plaintiff contends that she

1    legitimately brought claims under California statutes and common law, that her claims are

2    independent of the CBA, and that they can be resolved under state law without the need to

3    interpret the CBA.

4         Defendants argue that the terms and conditions of plaintiff's employment - including

5    what constitutes "termination" or "discharge," the conditions under which termination or

6    discharge will occur, and the way in which the company and the employee will resolve

7    disputes concerning conflicting medical opinions regarding return to work - were governed by

8    the CBA and LCA, and assert that at least two of plaintiff's causes of actions are preempted

9    by § 301 of the LMRA.  First, defendants argue that under plaintiff's claim of termination in

10   violation of public policy, there is a dispute concerning plaintiff's employment status in 2003

11   and 2004, resolution of which requires interpretation of the LCA that plaintiff signed.  Second,

12   defendants assert that the FEHA claim for failure to engage in the good faith interactive

13   process regarding accommodation of disability is directly related to a provision of the CBA

14   that must be interpreted to adjudicate the claim.

15        1.    Wrongful Termination in Violation of Public Policy.

16        Defendants argue that there is a dispute regarding "discharge" (one of the elements of

17   a cause of action for unlawful termination in violation of public policy), which can be resolved

18   only by analyzing the terms of the CBA and the LCA.  Defendants claim that plaintiff was

19   terminated from her employment at NUMMI on May 21, 2003.  In support, they attach a copy of

20   a May, 21, 2003, letter from NUMMI to plaintiff, as Exh. 2 to the Declaration of Carolyn Perez

21   ("Perez Decl.").  Defendants assert further that plaintiff filed a grievance with her union on May

22   23, 2003, Exh. 3 to Perez Decl., that she signed the LCA on December 13, 2004, in

23   settlement of the grievance, and that she signed a notice of resignation on March 3, 2005.

24   Exh. 5 to Perez Decl.

25        Defendants contend that plaintiff's allegation in the complaint, that she was employed

26   at NUMMI in April 2004, is at odds with the fact that she signed the LCA in December 2004

27   stating that she was "reinstated" and given a last chance to improve.  Defendants assert that

28   based on this inconsistency, there is a dispute regarding the element of discharge in the state

5

United States District Court

For the Northern District of California

1   law claim, which requires interpretation of the LCA.

2       Before reaching that issue, however, it is necessary to determine whether the LCA is

3   an agreement to which § 301 preemption applies.  Defendants assert that the LCA is a

4   "supplement" to the CBA, can only operate in the context of the CBA, and thus should be held

5   to the same § 301 preemption standards as the CBA when its provisions require

6   interpretation.  The Ninth Circuit has recognized that "any independent agreement of

7   employment [can] be effective only as part of the collective bargaining agreement." Olguin v.

8   Inspiration Consolidated Copper Co., 740 F.2d 1468, 1474 (9th Cir. 1984); see also Stallcop

9   v. Kaiser Foundation Hosp., 820 F.2d 1044, 1048 (9th Cir. 1987) (quoting Olguin in holding

10   that oral agreement made in connection with employee's reinstatement should be treated as a

11   CBA for preemption purposes because the independent agreement could only be effective as

12   part of larger CBA); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997-98 (9th Cir.

13   1987) (quoting Olguin in holding that alleged oral contract between employee and employer

14   regarding reinstatement was controlled by CBA since employee held position covered by

15   collective bargaining agreement).  Although the CBA in Olguin expressly provided that it was

16   the sole agreement between the employer and employee, and can be distinguished from

17   Stallcop and Young on this basis, see Walton v. UTV of San Francisco, Inc., 776 F. Supp.

18   1399, 1402 (N.D. Cal. 1991), Stallcop and Young have subsequently been approved by the

19   Ninth Circuit.  Audette v. ILWU, 195 F.3d 1107, 1112 (9th Cir. 1999).

20       Here, the LCA, signed by plaintiff on December 13, 2004, specifically refers to the

21   CBA when specifying plaintiff's conditions of employment.  Paragraph 1 of the LCA states as

22   follows:

23       Team Member understands and agrees:

24           1.    That my continued employment at New United Motor is based
                   upon and covered by the following terms set forth below:

25

26                  I understand that I must fully comply with the "Loss of
                 Seniority" provision contained in Article XI Section 3 of the
                 Collective Bargaining Agreement. In this regard, I shall be

27                  on probation for a period of 12 months effective [left blank]
                 and, excluding periods of dead time, I realize that any

28                  violation of Article XI Section 3 will result in my termination.

United States District Court

For the Northern District of California

1 Exh. C,  Def.'s Notice of Removal.  Therefore, the LCA is effective only within the context of the

2 CBA.  Under Ninth Circuit precedent, the LCA is the type of employment agreement to which

3 § 301 preemption applies.  See Audette, 195 F.3d at 1112, Young, 830 F.2d at 997-98,

4 Stallcop, 820 F.2d at 1048.  As § 301 preemption may apply to the LCA, the next step is to

5 decide whether the claim of wrongful termination in violation of public policy is in fact

6 preempted.

7 As noted above, defendants argue that there is a dispute regarding the element of

8 "discharge" in plaintiff's claim of termination in violation of public policy because the LCA is

9 inconsistent with plaintiff's claim that she was terminated in 2004.

10 Defendants seem to be asserting that there is a dispute about when plaintiff was

11 terminated, and that this dispute implicates the terms of the LCA because the LCA reinstated

12 plaintiff.  Apparently, the implication is that the LCA indicates that plaintiff was not legally an

13 employee of NUMMI prior to date that plaintiff signed the LCA, whereas plaintiff alleges in the

14 complaint that she was an employee in April 2004.  As the text of the LCA must be consulted,

15 so the argument goes, preemption is appropriate because the court must resolve the

16 inconsistency between the LCA, plaintiff's perception of her employment status at various

17 times, and the "termination . . . element of her state law claim."  Id.

18 Defendants' argument confuses the two concepts that are at the heart of the

19 preemption analysis.  On the one hand, § 301 preemption is appropriate where the court

20 cannot resolve the claims without interpreting the terms of the CBA or LCA.  Schlacter-Jones

21 v. Gen. Telephone of Calif., 936 F.2d 435, 442 (9th Cir. 1991); see also Lingle v. Norge Div.

22 of Magic Chef, Inc., 486 U.S. 399, 407 (1988).  On the other hand, preemption is improper

23 when "the claim is plainly based on state law."  Cramer, 255 F.3d at 691.  In fact, a "creative

24 linkage between the subject matter of the claim and the wording of a CBA provision is

25 insufficient; rather, the proffered interpretation argument must reach a reasonable level of

26 credibility."  Id. at 692.

27 That is exactly what defendants have attempted to do here.  They have seized upon an

28 inconsistency that they perceive between the complaint and the LCA, which might have a

7

United States District Court

For the Northern District of California

1   bearing on the state common law claim.  But the dispute about plaintiff's employment status in

2   2003 and 2004 is a factual one, rather than a legal dispute that requires *interpretation* of the

3   LCA.  Furthermore, defendants have not specifically identified any provision of the LCA that

4   requires interpretation by this court.

5          To the extent that a legal dispute exists, it involves the interpretation of state law

6   concerning the "discharge" element of a claim of termination in violation of public policy, not

7   the terms of the LCA.  Defendants acknowledge this point when they state that this "is a

8   dispute concerning 'termination' – an element of her state law claim."  Op. to Pl.'s Mot. to

9   Remand, at 7.

10          Defendants frame the legal issue as whether the elements of the state law claim are

11   "truly independent of the CBA."  Op. to Pl.'s Mot. to Remand, at 7.  This is not the correct legal

12   standard by which to analyze § 301 preemption.  If it were, virtually any cause of action raised

13   by a unionized employee against his or her employer would automatically be preempted.  It is

14   more appropriate to ask whether resolution of the case is "substantially dependent upon

15   *analysis* of the terms" of a CBA, <u>Allis-Chalmers</u>, 471 U.S. at 220, or whether the need to

16   interpret the CBA "inure[s] in the nature of plaintiff's claim."  <u>Cramer</u>, 255 F.3d at 691.  Here,

17   there is a negative answer to both of those questions.

18          Defendants have not demonstrated that any legal interpretation of the LCA is required

19   to resolve the state tort claim, and consequently § 301 preemption is inappropriate.[2]

20          2.      FEHA Claim for Failure to Engage in the Good Faith Interactive Process
                    Regarding Accommodation of Disability.
21

22          Defendants also assert that plaintiff's FEHA claim for failure to engage in the good faith

23   interactive process regarding accommodation of disability is preempted by § 301.  The

24   _____

25          [2]   Defendants filed a request that this court take judicial notice of an order denying a
     motion to remand, issued by Judge White of this district.  <u>Rodriguez v. NUMMI</u>, case no. 05-1443
26   (N.D. Cal. 2005).  Plaintiffs filed an objection to defendants' request, arguing that the legal and
     factual issues in that case were distinguishable.  While it appears that some of the legal issues
27   were similar to those in the present case, the five-page order does not, in and of itself, provide
     a sufficient basis to guide the court here.  The case is factually distinct and the order does not
28   provide enough information to determine if the relevant provisions of the CBA there are
     applicable here.  <u>See id.</u> at *4.

United States District Court

For the Northern District of California

1    argument is based on the fact that, according to defendants, plaintiff did not avail herself of

2    certain accommodation procedures as provided for in the CBA in the event of a medical

3    disability dispute between two doctors.  Defendants claim that because their defense to this

4    FEHA claim requires examination of certain terms of the CBA, the claim is subject to  § 301

5    preemption.  See Op. to Pl.'s Mot. to Remand, at 8-9 ("In order for the Court to determine if

6    [NUMMI] has in fact attempted to accommodate Plaintiff it requires the court to review the

7    CBA provision which goes directly to Plaintiff's issue which she has never taken advantage

8    of.").

9         Defendants again have misapplied the law.  Reliance on CBA provisions to defend

10   against a state law claim does not trigger § 301 preemption.  Cramer, 255 F.3d at 691; see

11   also Humble v. Boeing Co., 305 F.3d 1004, 1011 (9th Cir. 2002).  Here, defendants have

12   asserted that a provision[3] of the CBA governs the dispute, which they frame as a conflict

13   "between her doctor and another doctor regarding whether she can safely return to work."  Op.

14   to Pl.'s Mot. to Remand, at 8.

15        As an initial matter, the complaint does not make such an allegation.  Plaintiff asserts

16   that in July 2004, her doctor released her to return to work without restrictions, but that

17   defendants refused to allow her to return until her previous treating doctors issued releases

18   with respect to past injuries.  Complaint, ¶¶ 21-22.  Under liberal notice pleading standards,

19   this does not necessarily imply that other doctors had refused to release her to work.  See

20   Humble, 305 F.3d at 1010 n.29 (liberally construing plaintiff's complaint for purposes of § 301

21   preemption analysis with respect to a CBA's seniority provisions).  It is possible that the other

22   doctors would not have disagreed that plaintiff was fit to return to work on July 26, 2004, when

23   (as alleged by plaintiff) the then-current doctor certified that she could return to work without

24   restrictions.  See Complaint at ¶¶ 21-22.

25        Even assuming that such a dispute did exist, preemption is inappropriate because the

26

27        [3] Defendant's brief cites to a provision on pages 171-72 of the CBA.  However, the CBA

28   – as included in defendant's papers – extends only to page 118, so it is unclear to what provision
     defendant refers.

United States District Court

For the Northern District of California

1  CBA is merely raised as a defense by defendants.  See Cramer, 255 F.3d at 691.

2  Defendants assert that they are not liable because plaintiff should have availed herself of

3  certain accommodation procedures as provided for in the CBA.  But that, in and of itself, does

4  not raise a federal issue.  Plaintiff's claim is based on state law and the claim is independent

5  of rights under the CBA.  Valles, 410 F.3d at 1076 (citing Livadas, 512 U.S. 107, 123 (1994)).

6  As the Ninth Circuit recently held, for preemption to apply, the need to interpret the CBA "must

7  inure in the nature of the plaintiff's claim.  If the claim is simply based on state law, § 301

8  preemption is not mandated simply because the defendant refers to the CBA in mounting a

9  defense."  Id.  Here, preemption is not proper because the action is based on California's

10  FEHA statute and not the CBA, even if the CBA provides a potential defense for defendants.

11  See Assoc. Builders and Contractors, Inc., 109 F.3d at 1357 ("not every claim which requires

12  a court to refer to the language of a labor-management agreement is necessarily

13  preempted.").

14        The one case that defendants cite in support of their aforementioned argument, Allen v.

15  Pacific Bell, 348 F.3d 1113, 1116 (9th Cir. 2003), is not persuasive.  In that case, plaintiff

16  failed to avail himself of certain testing procedures that the applicable CBA required when

17  employees on leave sought to be accommodated by switching into different positions with the

18  company.  Id.  The court held that because the employee had not cooperated in the job search

19  process by missing the test, the company could be considered to have fulfilled its interactive

20  duty regarding accommodation of disabilities.  Id.  While Allen may have some bearing on

21  defendant NUMMI's affirmative defenses, it did not analyze or even mention the applicability of

22  § 301 preemption and, therefore, provides no guidance on that question.  Furthermore, in

23  Allen, plaintiff raised claims under both FEHA and the Americans with Disabilities Act,

24  meaning that there was never a dispute in that case as to the existence of a federal question.

25  See id. at 1114.

26        Finally, defendants make the same argument in the context of the FEHA claim that they

27  did with respect to the wrongful termination in violation of public policy claim.  The argument -

28  that the LCA requires interpretation to resolve the supposed conflict between the LCA and the

1   complaint concerning plaintiff's employment - is rejected for the reasons stated previously.

2   **D.      Motion for Attorney's Fees**

3          Plaintiff requests $4,950.00 in attorney's fees and costs based on the alleged

4   improper removal of this action.  This request is hereby DENIED.

5                                  **CONCLUSION**

6          In accordance with the foregoing, the court finds that the motion to remand is

7   GRANTED.  The motion for sanctions is DENIED.  The hearing on this matter, scheduled for

8   November 23, 2005, is VACATED and the clerk shall close the file.

9

10  **IT IS SO ORDERED.**

11  Dated: November 23, 2005

12                                                        _____

13                                                        PHYLLIS J. HAMILTON
                                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

11